Case number 21-4106, United States of America v. Eduardo Velasquez. For our constituency, 15 minutes presiding, Mr. Richard P. Kuczyk for the appellant. You may proceed. Thank you. May it please the court, Judge Ketledge, Judge Rogers, Judge McGinn. I am Richard Kuczyk. I am CJA counsel for Eduardo Rios Velasquez. It is an honor and a privilege to be here today, and likewise it's an honor and a privilege to be a member of the CJA panel in the Northern District of Ohio. This case brings us from the Northern District of Ohio, Eastern Division from Youngstown. We were here once before, and we're here once again. And so, why are we here? 2E or not 2E? Because this case gives this court a great ability to make a distinction relative to 2E or 2A. That's a good starting point. That's something I raised down below. That's something I raised in this appeal. That's something I believe is before this court. So, we're not here to talk about that for the last time around. We want to talk about it. Well, Judge Rogers used 2A at all. I think that I raised it sufficiently when I argued the distinction between 2A and 2E. I thought when I brought that up, that would be sufficient for this court to take a look at it, not secondary to the fact that I read the remand as a remand for sentencing. So, I'm hopeful you will think about that. We're not here to talk about guilt. This court has already ruled upon that. We're not talking about a jury verdict. We're here to talk about the United States Sentencing Guidelines. Let's talk. I can't speak for my colleagues, but as for me, I'd really like to focus on 2X, which is what we've demanded to have considered. Is that correct? Yes, Your Honor. I'm sorry. I do want to take time talking about what needs to be resolved. I share that sense. I mean, we specifically addressed two of the three arguments. I think that we have a new brief, but there is the remaining 2X1.1, and that might be the best thing for us to focus on, I would suggest, if we're going to echo General Robbins. Yes, Your Honor, and I can assure you I'm here to focus on that. Let's talk 2X1, because this distinction of this case relative to 2X1 is critical. So, let's talk about the U.S.S.D. for a moment. The sentencing guidelines have a purpose. The mission statement for sentencing is to provide for just punishment. What's fair? So, the sentencing guidelines are strictly a roadmap to get us to 3553A. They're not mandatory, but what they do is an opportunity to take a look at each case on a case-by-case basis. That was U.S.S.D. Soto. Fact-specific, so that we come up with a fair sentence. So, in this instance, we have a situation where a couple jailbirds are talking about, you know, we're going to do this, we're going to do that, we're going to get rid of Tyra, who, being sent, was hired to find her, not kill her. So, we already know that he's guilty of murder for hire. And we said in the last meeting specifically that he used a facility, interstate commerce, with the intention to enter into a murder, an agreement to murder somebody in return for something of that nature. We specifically said it's substance to death. So, the question now is whether you're entitled to a three-point reduction under 2X1.1B2. Right? That's the issue. Absolutely, Your Honor. And that, I mean, so, I understand your comments about sort of the objects of the sentencing guidelines. But we do have a specific question before us, which is whether your client, the record here supports a three-point reduction under this particular guideline. And the guideline tells us what the requirements are for that. And it must be that your client did not complete all the acts that the conspirators believe necessary on their part for the successful completion of the substance of the offense. Right? Correct, Your Honor. You know that all too well, more than all of us, from the U.S. versus Susan case, where you talk about incomplete conspiracy. That's exactly what happened here. Well, so what is, you know, it says the successful completion of the substantive offense. What is definite article? What is the substantive offense for purposes of our decision in this case? Sure. And that is not a solve. It's not an attempted murder. Well, let's stick with what my client is charged with. Take a look at it. Isn't it what he was convicted of here? Murder for hire. He is convicted of, look at the indictment, yes, murder for hire. But what does the requirement, what does the element require? Pecuniary offer or receive. You know, I was guilty of that already, so. So we're moving on. Now, the guilt is done. Now we're talking about sentencing. So what's fair? What's sufficient but not greater? That's what's so critical. What's fair is whether it was successfully completed and what was the substantive offense. Those are the issues. Exactly, but when you take a look at that and you also look at the behavior, it was not. The only way you can rule in your favor is to sort of get away from the words and talk about fairness, is that it? I'm sorry, Your Honor? The only way you can rule in your favor is to sort of get away from the words and just talk about fairness. No, we need to look at whether there was an offer or a receive. The jury said there was. Well, good for the jury. We don't know what the jury said. We know they found. I think some things have come to ground here. I mean, our court has already held that your client committed murder, Your Honor, and specifically decided that he, I can't find the quote. He said he did all these things, you know, had the intention to enter into an agreement to kill Tyra Williams in return for something of that. So just to qualify that argument, we didn't know that he actually did those things. We aren't being inspired to do those things. He did, but that's not what the guidelines are all about. The guidelines now look to, A, is there an enhancement, and B, does he get a three-level reduction? So in Simon, that's what they talked about. They talked about, well, you've got to look at the primary offense. You've got to give the enhancements. But, oh, what did Simon do? They gave a reduction. And what's critical here is what does the enhancement talk about? So if it's 2A, then we look at was there a receipt or an offer? And, Judge, you're saying, well, the jury already said, this court already said. This court affirmed the jury's verdict. This court then moved on to the question of, well, does 2X1 now apply? So now we're not looking at what the jury thought. Now we are looking, well, where's the solicitor? My client was not a solicitor. He wasn't the boss. I'm not sure what we're talking about here. 2X1.1. I mean, you're arguing that you have an entitlement to a three-level decrease in basis, right? Under 2X1.1. So I'm sort of, like, focused on 2X1.1. And not sort of more high-flown abstract ideas. But I don't believe those are abstract. Let's just stay with the answers, all right? Because I think the three of us want to talk about 2X1.1. Sure. And I think that's probably fair. And the question is, what, whether your client had committed all the acts necessary on, you know, and the other guy who's on the phone, committed all the acts they believe necessary on their part for the successful completion of the substance of offense. The substance of offense, I think, is murder for hire. And so I guess my question is, what acts do you think remain for them to engage in in order to complete the offense of murder for hire? Not murder, but murder for hire. Lots of things. How about a conversation between the boss, the solicitor, Leon, and my client? How about that? Let's start with that. Number two, there's no evidence that my client even met Tyra. There's no evidence that he ever saw Tyra. There's no evidence that he ever completed any type of overt acts. And, Your Honor, that's what's critical to look at. And you can conspire to do something without actually doing it. Well, he was conspiring with some, yes sir, with some jailbirds. I see your time is short. Let me ask you a question that we suggested you be familiar with. And that is 2X1.1B2 is what you were lying on at the start of your argument. But 2X1.1C is a cross-reference which says when a conspiracy is expressly covered by another guideline section, apply that section. Yep. And there is. And at least two other circuits have said 2A1.5 is such an express coverage and therefore you just don't apply 2X1.1B when the proper guideline is 2A1.5. And I know you can argue that that wasn't raised on a great set of your opposing counsels. Assuming it's properly raised or that we can rely on it as a proper interpretation of the guideline, why doesn't that just create a start? You can't rely on B2 because B2 doesn't apply. Because B2 is part of the guideline that doesn't apply. Instead, 2A1.25 applies. What's the answer to that? Well, I believe that, first of all, That's the reason I really wanted to have more arguments. So I'd like to ask you that question. Well, thank you, Judge Rogers. First of all, I believe this is a count. And if you look at the offense guidelines that expressly cover attempts, include no 2A1.5 in that section. So now we're looking on the next page where we're talking about the project. Well, so this is an attempt as far as whether you're talking about solicitation. And I mentioned there's no solicitor here. And my client is not a solicitor. I'm talking about conspiracy. So could you just, because of the red lights on, answer this question on its terms, that your client has been convicted of conspiracy, an attempt, conspiracy to commit a murder or a crime, whatever. And if Judge Rogers asks a specific question about the affordability of 2S1.1, I think we would all appreciate an answer directly to that question. Thank you, Judge Keffley. The answer to that is when we're looking at guideline applications, the court must look at a factual basis, not just from a jury burden. A U.S. guideline has to be defined by the trial court. So if you take the argument and analysis in Simon, Simon said the court said don't just look at the substantive offense. Look at 2X1. And that's why I think this court should rule in favor of my argument because the other circuits are not as wise as the Sixth Circuit. I mean, is your response to that in the conclusion of the case, that 2X1.1 does apply here? 2X1.1 absolutely applies here, and it goes on the analysis of looking beyond just what the jury verdict is. If you look at the factual basis, and the factual basis, Your Honor, says there's no offer or receipt. That's in the indictment. That's what the sentencing court must look at, not just a jury verdict. And this is not so controversial. Do you agree or disagree with the Simon case? The Simon case is an interesting well- It's a valid question. However, the court should instead apply that guideline section. And then it applies that specifically to conspiracy to commit murder. It seems to just say you can't rely on 2X1.1B. This is in 1291 of the opinion. It does, Your Honor. Let's not stop with conspiracy. We need to answer this question directly. I'm answering it. You want 30 seconds to talk about it and explain further, but you must answer the question that you're offering, right? Yes, Your Honor. Okay. The answer to that is the guideline provides not just for conspiracy, but then we look at the indictment, which talks about money. So if you- Yes, you must look at the factual basis, not that it just comes from a jury verdict. So my answer has to remain consistent in terms of how my client's approaching this question. The issue of-as Simon comes along- That's fine. Okay.  Thank you, Your Honor. May it please the Court, Daniel Rankin on behalf of the government. 2X1.1B2 doesn't apply here for two reasons. It does? It does not. I mean the reduction part of it. Yeah, the three-level reduction. The first reason is the reason the government identified it as free. The Blaskos and Cordero completed all the acts they believed necessary for conspiracy between murder and fire. It's a tenuous argument. You can see why it's at least tenuous. There was no murder. There was no payment. There was just no payment to do that. So the whole idea of having a difference between conviction for a crime and conviction for a conspiracy to commit a crime is that if you actually commit the crime that you conspire to do, you should be punished more. Right? Yes. That's a theory that otherwise would be hard to see on the surface of these. How you would say that there's an agreement to complete. There's an agreement to murder and then get paid for that. He didn't murder, and he didn't get paid for it. So therefore, it's not complete. So on its face, it looks like this is a B-2 case. Until you look at the guideline itself, which says that they believed that they couldn't take the lead, which is, believe is kind of a funny word for the guideline, because how do you tell who they believe? Isn't it? It seems odd. I mean, there's nothing that the A covers. It specifically says conspires. So the completed offense is a conspiracy. Yes. Yes. So it would always be true. The guideline, the reduction would never apply because it would always be a subsequent offense. It would be a conspiracy. Because that's, I mean, it just, I don't know. It's confusing to me. And I suppose that's why perhaps the, you know, 2X1.1 doesn't even apply, because there's a specific guideline that applies. Because otherwise, you would have this completed offense of conspiracy, and it just would always be true that you wouldn't get the reduction. Does that make any sense? That's what I'm looking at 1958A. Because it specifically says all of the same with intent or who conspires to do so. But the conspiracy is embedded in the provision, right, in the subscript. Unless they didn't complete all the, or they didn't complete all the X that would be necessary for the murder prior. But didn't complete all the X necessary for a conspiracy to murder prior? What would that mean? What would that look like? Because if you're, I guess, yeah. I mean, maybe. I share his concerns. Maybe the question is, you know, is conspiracy to commit murder prior? Under the terms of the statute, as it says, or who conspires to do so. Does that merge into the substantive offense of 1958A? There simply can't be a separate offense of conspiracy, because that is included. It's encompassed within the definition of the crime itself. It somewhat is, because conspiracy just requires an agreement. Yeah, it requires the underwriting. You can pick up the instrument at interstate commerce, right? Right. You know, you're on the park bench, but nobody's yet made a phone call or something. Right. That would be the conspiracy to have an agreement, right? Right. And they voluntarily murdered him. It was an overt act. So then they committed murder prior, because it's conjunctive, right? It's an overt order. I think that's what it is. Oh, yeah. Or conspires to do so, right? Yes. So then where does that leave us here? At least you can see why it leaves us a little bit less. And if that's so, I'm wondering why you don't argue simply that it doesn't apply under the first two cases. It's adopted by other circuits. It seems to be the plaintiff, which is companies 2X1.1B, when conspiracy is covered by another offense guideline, which it is. Well, that's the second one. 2X1.15, but you don't argue that, right? We did not argue that. I didn't. Quite frankly, I missed it. It's not that the Department of Justice doesn't want to rely on that. No, you're right. I focused on what the district court did and what the probation department did. I didn't look. And I should. Well, in that situation where you missed it, which is standard in my group, I appreciate your time. I'm not sure. This is something that was missed before I had a long story time. I made it so. Well, it becomes confusing because the guidelines aren't designed for you ever to get there. One could argue. And that's exactly what we're looking at in the other service that we have to do to prepare for the process. And they got this case. They just said they're not going to use 2X1.1 because there's a cross reference in the story. This is something needed when you have something that isn't referred to specifically as 2X1. Right. That's precursor. Is that right? Exactly. Is there a chance to look at it? Yes. Even when we look at just the title of 2X1.1. Attempt solicitation conspiracy. We look in parentheses right after. Not covered by specifics. Is there a problem with our line on that? We are convinced by that. No, I don't think so. Because we didn't raise it. So can you waive something like that? I guess is what I'm asking about. I don't know. But I'm 90 seconds behind to figure this out. So just to walk through this. All right. So what we're saying or what this exchange is suggesting is that there cannot be a separate effect of the conspiracy to get the voter to hire because it's merged in the voter to hire by the terms of 1958A. Right? Because you're always going to have to have two participants. Right? You can't just have one person. If we assume that's true, then what's being suggested is that we would not look at 2X1.1, which is the sort of generally applicable guideline for conspiracies. Right? Instead, we go right to the voter to hire guideline. Right? And that tells us, that gets us to 37 in the end. Just like this would without the reduction. Yes? Okay. All right. I just wanted to make sure. It's clear exactly the different guidelines. It's a guideline kind of argument. The guidelines say you can be convicted of a conspiracy to commit various things. There's a statutory basis for all of those. But there may not be a guideline for all of those. But there's a specific guideline for a conspiracy to commit murder. Of course, it's identified in the application. Therefore, if cross-references apply, then there's just no 1.1 for each of these. I wouldn't have to make this. It's not relevant anymore. It's gone. The argument would be that it's consistent with the scheme of the guidelines. Because if you look at 2A1.5, it talks about the situation, about whether the offense actually results in a felony. So it makes those kinds of distinctions right within 2A1.5. It doesn't have to be taken care of. Take this away from me. I'm setting a bad example. And whatever it is, don't even bring it into court. Okay. That's my question. If we're clear about what the argument is that was apparently adopted in those circuits, to what extent are we required or permitted to rely on that argument to rule in your favor? That's my question. Your Honor, there's a number of cases that say this court can't apply to any case. And that's what we rely on here. We didn't argue it. We focused on what the district court did. Once I saw it, once we received a letter from this court asking us to be prepared for this issue, it became fairly obvious that 2X1.1E2 was inapplicable because of 2A1.5. You know, they cross-reference each other. You're right. 2A1.5 also considers different circumstances where the person's killed. That raises the offense level. Yeah. I mean, that does seem fair. And if so, the dead person after the murder is not required. I mean, you know, I think your argument that it's a completed offense still, you know, I mean, even if we were to look at 2X1.1E2 as a reason why it doesn't apply, if he's done it, he said that, correct? I mean, that's what the court, in your assertion, I think is likely correct. What was the guideline for the 1958A? It's not 2A1.5, is it? For conspiracy, it's 2A1.5. But for murder, for hire, it's just 2B. Isn't it 2B? It's 2A1.5. Can you walk us, I mean, you know, if you're able to, can you walk us through how that with 2B, what you say applies? Because we can't look at conspiracy stuff now. We're looking at murder for hire. So what is murder for hire? Tell us. It's 33. And there's, of course, 837. That was with the four levels firm. We've seen it before. We've seen it with something else. Isn't that what was going to be part of it? Repetitive element? This court has found that it's not a double counting situation or anything like that. Okay. So they found that it's an appropriate four-level arrangement. Okay. This 2A1.1 is about conspiracy generally. It wouldn't apply. It doesn't apply if the conspiracy is covered by something else. That suggests to me that that guideline applied to the substantive offense, 2A1.5. But it didn't apply here to the substantive offense. Right. Yes. Because? I'm sorry. I'm sorry. You're saying it was 2B something? Yes. Well, there was an issue in the previous appeal, whether 2B should apply or 2A. Right. I'm sorry. Yes. The 2B or the 2A, right? Yes. And this court found 2A based on a media consistency in a couple other cases. Okay. Because this was a conspiracy, not just a substantive murder. Right. It was a conspiracy. It was a conspiracy part of 1958A. Yes. So once that – so once 2A applied – so 2A did – so 2A was the guideline that applied on resettless innocence. Yes. So that's like 33. Okay. So then she has to do that one more time. The 2B or the 32. Okay. I got it. I'm sorry. Thank you. Okay. So 2B1.4 tells us to apply a case on the ground. Is 2B1.4 what applies here? I think so. I'm sorry. That's okay. That's 32. That was litigated before. Right. So it's a base offense level of 32. But it's more the offense level that would be underlined all the time, which is what? I mean, we already covered this in the last meeting. Yeah, it's a circumstance. We did cover this part in the last meeting. We walked, yeah. Well, you said that as the other courts of appeals have consistently said, for one reason or another, the reasoning isn't always entirely consistent. It says apply the grader, and there is an offense level grader. It's the underlying unlawful conduct for a 32. But where there's a specific provision dealing with conspiracy to commit it, the base level is 33, and you can add 4 if it involved the offer or receipt of humanitarian value. It doesn't say whether it actually carries it out, because you would have to see if there's actual debt when you go over 2A1.1. So there's a articulated scheme for how much you get punished for this kind of conspiracy. That's all been decided as far as I'm concerned in our previous case. The question is whether we're going to apply 2X1.1, which is a general provision for what to do with conspiracies. When there's no guideline that deals with a conspiracy, the guideline only deals with what you get punished for the actual underlying crime. That's because that's all there is. That's all there is. Yeah, right. You're saying? No, the idea is 1958 deals with conspiracy to commit the underlying crime. There is something to underlies conspiracy. That's dealt with in 1958. But more importantly, it's dealt with by a specific guideline, which is conspiracy to commit murder. So you don't have to figure out what the guideline is by looking at the guideline for the underlying offense and then using 2X1.1 to say, well, that's also the standard for committing a crime. It's the same. It's incorporation by reference, as it were. But you don't need to do that incorporation by reference to figure out what it is for a conspiracy. When you've got a guideline which deals explicitly with a conspiracy, which the various courts have said is 2A1.15. I'm sorry, 2A1.5. And that just seems to be the most straightforward words in the scheme of the guidelines. When you look at them all and see how they make sense, if they really do, you just look at 5B. All right, maybe it's too abstract an argument to jump out at anything. It really isn't. There's no cases that hold the contrary. No, I didn't find any. And it really isn't that abstract. It's something that's a pretty straightforward answer when you look at the guidelines. There's no further questions? I think we're good. Okay, thank you. Thank you. Maybe I'm not there in the high presenting this. And we need to go back to the United States sentencing guidelines. Okay, what's the purpose? What's the mission? But let's also distinguish this case. We're not talking about murder here. That's not the crime. You know, the US preacher said very clearly, this statute does not prohibit murder or attempted murder. It's imperative for this court to focus in on murder for hire versus murder. So my client is not accused of conspiring to murder. He is charged in the indictment with conspiracy for murder for hire. That distinction is critical. You can't talk about murder. What's murder? Or what's attempted murder? You know, shooting at someone. So that distinction of murder for hire. Because what's important about that, Your Honor, is okay, conspiracy. We're talking about conspiracy. But we left out the last part. It's conspiracy for murder for hire. So is this abstract thinking? Yeah, perhaps it is. And that's not what the purpose of the United States guidelines are. It's a practical reasoning that we need this. So in this case, why shouldn't 2X1 apply? So if this court says 2A1.5, which is conspiracy for murder because you didn't like the 2E1, which is more appropriate in my opinion, and I believe it is, plain error for this court to review, clearly in this application. But when you look at the cross-references, you can't just say murder because the distinction is not being charged with murder versus, in this case, being charged with murder for hire. So what's the distinction? Murder for hire. Intent. You're having an intent to murder someone. You pick up the phone with a certain intent. Well, yes, but when you talk about incomplete acts, I gave you a whole surge of incomplete acts. In terms of the offense, you pick up the phone with a certain intent and the offense is completely factual. Well, if you believe that a factual basis, but that's not what we're reviewing on sentencing. The purpose of sentencing is take a look by the trial judge to apply the guidelines for the purpose of sentencing. It's not like in the state courts. You're convicted. You get three to five.  By the trial judge who heard it all. And critical to that, as well, is when we make application for just sentence, sufficient but not greater. Remember, we're in a roadmap to get to 3553A. That is what USSG is for. So are we splitting hairs? If you look at the indictment, and I urge the court to be critical upon not just the conspiracy component, but the failure of exchange for money. And that's where 2X1 comes into play. I don't think you should just throw out 2X1.1 on murder for hire. This case is very fact specific. And what gives this court the opportunity to define how 2X1.1 will apply to murder for hire is not just ethereal thinking, but the practicum that comes from the obligation of the sentencing court to provide a fair 3553A sentence from the roadmap of USSG. So if you throw out 2X.1, and you throw out Simon, because Simon said clearly, what is the court saying, Simon? The trial court should not just rely on the death. But you get a variance for that. The issue in this case is whether the guidelines were properly calculated. I'm going to ask you, I know you're trying to solve this. Ask what you want. You've got 2X1.1C. Can you read that? Yes. I can read it to you. It says, I'm leaving out the irrelevant words. When a conspiracy is expressly covered by another offense guideline section, you would agree that 2A1.5 is a guideline section, right? I do agree it is. I don't agree it's the appropriate one. No, no. The court objected to the agreement. The most basic question is that whether this is an offense guideline, another offense guideline section is another offense guideline section, right? Yes, Your Honor. Okay. Now the next question is, is conspiracy expressly covered by that section? I'm looking at that section. It says, first word, conspiracy. Ergo, therefore, this cross-reference applies, right? Yes, but when are we here for today? For this court? No. I'm going to wait a minute now. If it applies, then I draw the conclusion that 2H1.1B does not apply. Have I lost it? I'm just talking words and logic now. I'm not talking about your guidelines or advisory or anything like that. Are you? I do not agree with that. It could be conceptual. You think the cross-reference can apply, but then we apply B even so, just because it fits. Well, if you split the hair such that you say the just punishment section that roadmaps you to 3553A should not apply, let's keep it clear. 3553A is a statute. Yes, Your Honor. I'm just trying to get the meaning of the guideline words. That's all I'm saying. What we have to do is figure out which guidelines apply. And then once the district court figures out the right guidelines application, the district court can decide whether it's going to stay within the range or reject it. What you're talking about, 3553A, fairness, et cetera, that's the subsequent question whether you're going to just reject it if it satisfies the guidelines. But if the court gets the wrong, chooses the wrong guideline, you're saying procedurally unreasonable. Certainly that. And you'd be right. So that's what Judge Rogers is trying to sort out. And I understand that. So you're talking about a later stage. He's talking about an antecedent stage. Well, I think they're all conjoined. But I hear what you're saying, Judge Rogers. But what I'm trying to point out, this court is here to make a distinction and to make precedent. Let me ask this. If we were to decide that you lose on this issue, would you say that you've not had enough chance to respond, or are you going to ask for it? I'm not saying you shouldn't, but you should have asked for the chance to respond in writing because it wasn't made by your opponent. Do you feel like you responded enough today so that you can't say you never had a chance to respond? I think the government weighed the argument, but it's be leveled by it. I think that when we're here to provide the answer... Well, the court can do whatever the court wants to do in terms of... We can affirm on any basis the court by the right. The district court said that it's 37 based on its level. We think that's correct for reasons not argued by the government. We're not going to reverse the district court for being right because it already did make it. Right, and you've already found 2A1 is the answer, so that's the law of the land. But that doesn't go to the distinction that we're trying to make and the appellant is trying to make to encourage this court to make a precedent across the districts that will satisfy the conceptual basis on the big picture. When we're talking about murder for hire, and I ask you to not lose track of that. Your Honor, it's not just conspiracy. It's conspiracy, murder for hire, and that goes along with the other factual pattern of money. All right, that sounds like a good place to... If you want a chance to respond to this more because it's not raised in your own street in these terms, you know how to ask for that, right? Well, I... I'm not saying you do or you should. I'm just saying you know how to ask for that, right? Oh, well... I'm happy to do so. How much time do you want before you decide whether to ask for something? You'll have to forgive me, Your Honor. I have not had experience with that before, but probably 30 or 60 days for any... That's too long. Oh, and you need... This case has been pending quite a lot. I mean, we're going to have supplemental briefings, is that what you were talking about? I just would like to affirm on the grounds that we're not arguing by one side, we're arguing on the other side. Sure. So... I mean, Mr. Kucich, I mean, the question... I mean, the discussion here has... We've taken up the question whether 2X1.1 simply doesn't apply at all because of the idea that conspiracy to commit murder for hire is merged into the offense of murder for hire, so there isn't a separate... It's all just a subsequent offense. So the 2X1.1 conspiracy guideline, generally applicable conspiracy guideline, doesn't apply at all. You're arguing it does apply, right? Yeah. And so if you would like to submit anything in writing arguing that 2X1.1 does apply, nonetheless, and you could challenge the premise that conspiracy for murder for hire is merged into the offense itself, and there's no separate conspiracy offense, or you can make any argument you want that 2X1.1 still applies, notwithstanding that 1958A seems to encompass conspiracy into murder for hire itself, you're welcome to do that. I would suggest you ought to give us, like, a letter brief or whatever. I don't really care. But, like, within a couple weeks, two or three weeks, because this thing's been hanging around for a long time, we need to give you both an answer. Is that fair? Yes, Your Honor. Okay, how about three weeks? Three weeks would be a good effort, or goal, I should say. That's not going to disrupt any plans on your end. Well, I'm here to serve as CJA counsel, and I'm here to make that a priority. Thank you, I appreciate it. If that's comfortable, it doesn't throw off any of your preexisting... Well, is four weeks too much? No, it's not. But four weeks, that's a good compromise. Why don't you give us... I feel a little better at the moment, thank you. So why don't you give us that supplemental briefing in four weeks, whatever that day is. I think you guys have already sort of said what you want. Okay. We got your argument. Okay, thank you, Your Honor. Now, I'll just give Mr. Pruitt a chance. Okay. All right? Yes, Your Honor. All right, gentlemen, thank you. Thank you for this vigorous engagement with the court this morning. We appreciate your assistance with the issue. The case will be submitted to the court of appeals, Your Honor.